UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHANE BARBER                                              CIVIL ACTION

VERSUS                                                    NO. 18-6914

SPINAL ELEMENTS                                           SECTION "R" (3)

## ORDER AND REASONS

Before the Court is defendant Spinal Elements' unopposed motion for summary judgment.[1] Because plaintiff cannot prove essential elements of his claims, the Court grants the motion.

## I.   BACKGROUND

This is a product liability case. Plaintiff Shane Barber underwent Anterior Lumbar Interbody Fusion on his lumbosacral joint on May 19, 2015.[2] The procedure involved placing a Zeus #14 Cage, a product manufactured by defendant, in the plaintiff's lower back.[3] The surgeon who performed the surgery secured the cage with, among other things, an

---

1   R. Doc. 17.
2   R. Doc. 17-3 at 1 ¶ 1. Plaintiff has not filed a response to defendant's statement of uncontested facts. The Court therefore deems the facts provided in the defendant's statement admitted. *See* E.D. La. L.R. 56.2.
3   *Id.* at 1 ¶ 2.

orthopedic screw.[4] The screw was manufactured by third party Synthes.[5] After the surgery, plaintiff continued to feel pain in his back.[6] He sought treatment for this pain on multiple occasions.[7] His doctor determined that the screw manufactured by Synthes had broken and that this fracture was causing plaintiff's pain.[8]

On June 11, 2018, plaintiff filed a petition for damages in Louisiana state court.[9] On July 23, 2018, defendant removed the action to this Court on the basis of diversity jurisdiction.[10] On July 1, 2019, defendant filed the instant motion for summary judgment asserting that plaintiff had failed to meet his burden on any of his claims.[11] Plaintiff did not respond to the motion for summary judgment. In addition, plaintiff's deadline to make expert disclosures was June 14, 2019.[12] Plaintiff has failed to make any such disclosures.[13]

---

[4] *Id.*
[5] *Id.*
[6] *Id.* at 2 ¶ 4; Ex. G at 107.
[7] *Id.* ¶¶ 5-6; Ex. F at 116.
[8] *Id.* ¶¶ 5, 7; Ex. F at 44.
[9] R. Doc. 1-1.
[10] R. Doc. 1.
[11] R. Doc. 17.
[12] R. Doc. 10 at 2.
[13] R. Doc. 17-2 at 9.

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075. A dispute about a material fact is genuine "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went

3

uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

## III. DISCUSSION

Plaintiff alleges that defendant is liable to him under the Louisiana Products Liability Act (LPLA). The LPLA provides that a manufacturer "shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity." La. R.S. 9:2800.54(A). A product is unreasonably dangerous for the purposes of the statute "if and only if" it is unreasonably dangerous (1) in construction or composition, (2) in design, (3) because of inadequate warning, or (4) because of nonconformity to an express warranty. *Id.* at 9:2800.54(B)(1-4). Thus, the LPLA limits plaintiffs to four theories of recovery: construction or composition defect, design defect, inadequate warning, and breach of express warranty. Plaintiff's complaint includes allegations directed toward each of these theories.[14]

To establish a claim for defective construction or composition, a plaintiff must establish that, "at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La. R.S.

---

14 R. Doc. 1-1 at 3-4 ¶ 14.

9:2800.55. A claimant must show "not only what a manufacturer's specifications or performance standards are for a particular product, but how the product in question materially deviated from those standards so as to render it unreasonably dangerous." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 311 (5th Cir. 2017) (internal quotation marks omitted). A claimant must also show that the alleged defect was the cause-in-fact of his injury, as well as the "most probable cause." *See Wheat v. Pfizer, Inc.*, 31 F.3d 340, 342 (5th Cir. 1994).

The record does not include any information regarding defendant's manufacturing specifications. There is no evidence that the cage manufactured by the defendant was defective, or that it caused any harm to the plaintiff. To the contrary, plaintiff's medical records indicate that the cage "appears in good position" despite the broken screw.[15] Plaintiff's treating physician informed plaintiff that "as a family medicine physician" he was "not qualified . . . to speculate on why the screw may have broken."[16] Plaintiff has not come forward with any other expert opinion identifying defendant's product as the cause of the broken screw. Indeed, defendant has offered an opinion by Dr. John Logan, the orthopedic surgeon who

---

[15] Ex. H at 62.
[16] Ex. F at 116.

performed plaintiff's surgery to insert the cage and screw, stating that the cage "is not the cause of orthopedic screw fracture."[17]  There is thus no evidence establishing a defect in construction or causation.

To prove an inadequate warning claim under the LPLA, plaintiff must demonstrate "(1) that the defendant failed to warn the physician of a risk associated with the use of the product, not otherwise known to the physician, and (2) that the failure to warn the physician was both a cause in fact and the proximate cause of plaintiff's injury." *Willet v. Baxtern Int'l, Inc.*, 929 F.2d 1094, 1098 (5th Cir. 1991).  The plaintiff must show that "a proper warning would have changed the decision of the treating physician, *i.e.*, that but for the inadequate warning, the treating physician would not have used or prescribed the product."  *Id.* at 1099; *see also Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 265 (5th Cir. 2002) (noting that Louisiana follows the "learned intermediary doctrine," in which a manufacturer need only warn the patient's physician, not the patient himself, of the device's potential harm).

The record contains no reference to a risk known by defendant that it failed to communicate to plaintiff's treating physician.  There is no indication that the arrangement of hardware used in the plaintiff's case previously led

---

[17]     R. Doc. 17-7 at 1 ¶ 6.

to screw breakages of this kind, such that defendant should have known about this risk before surgery. Indeed, defendant has made the uncontroverted assertion that, of the 1,430 devices implanted since 2012, there have been no reports of the device's causing a fractured screw.[18] In short, there is no evidence that the cage caused the screw to break.

To establish the elements of a design defect claim, a plaintiff must show that

> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
>
> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.

La. R.S. 9:2800.56. Plaintiff has not submitted evidence of possible alternative designs for the cage that would have lowered the risk of screw breakage. As such, plaintiff cannot show that the cage suffered from a design defect.

Finally, to establish a breach of express warranty claim, a plaintiff must show that (1) there was an express warranty made by the manufacturer about the product; (2) the express warranty induced the plaintiff to use the

---

[18]    R. Doc. 17-3 at 5 ¶ 15.

product; and (3) the plaintiff's damage was proximately caused because the express warranty was untrue. La. R.S. 9:2800.58; *see also Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 452 (5th Cir. 2002). The LPLA defines "express warranty" as "a representation, statement of alleged fact or promise about a product . . . that represents, affirms or promises that the product . . . possesses specified characteristics or qualities or will meet a specified level of performance." La. R.S. 9:2800.53(6). The statute adds that "general opinion[s]" or "general praise" of a product do not qualify as express warranties. *Id.*

Plaintiff has provided no evidence of express warranties made by the defendant. Absent this evidence, he cannot prevail on an express warranty claim.

Because plaintiff has not responded to defendant's motion, the only evidence in the record on any of plaintiff's claims are his own interrogatory responses and deposition testimony, which are cited by defendant. Plaintiff made conclusory assertions in his discovery responses that, "Dr. Deaver has opined and stated that . . . the spinal instrumentation was defective and/or faulty and should not have failed had it been designed properly and/or had adequate instructions been provided to the end user and/or healthcare

9

providers."[19] At his deposition, plaintiff also testified that his treating physicians told him "that the system . . . made by Amendia is just a failure."[20] These statements do not create a material issue of fact for two reasons. First, plaintiff's statements are wholly conclusory. He does not identify any characteristic of the defendant's product that was unreasonably dangerous or mechanism by which it caused his injury, which a plaintiff is required to do for any type of claim under the LPLA. *Stewart v. Capital Safety USA*, 867 F.3d 517, 520 (5th Cir. 2017) ("To prevail under any theory under the LPLA, [plaintiff] must establish . . . [plaintiff's injury] was proximately caused by a characteristic of the [product; and] this characteristic made the [product] 'unreasonably dangerous. . . '" (internal quotation marks omitted)); *see also Little*, 37 F.3d at 1075 (stating that conclusory allegations and unsubstantiated assertions do not create a material issue of disputed fact).

Second, while expert testimony is not required in every LPLA case, "courts consistently require expert testimony in products liability cases," when the product or feature in question is complex, and a layman may not readily grasp the implications of these features. *Id.* at 520-21. A complex medical case such as this one requires expert testimony. It is highly doubtful

---

[19] Ex. N at 7.
[20] Ex. B. at 73.

that the average consumer has ever heard of the Zeus #14 Cage, has any idea how it is constructed, or has a point of reference for what would constitute a deviation from its typical level of performance without expert testimony. *See Arant v. Wal-Mart Stores, Inc.*, No. 13-2209, 2015 WL 1419335, at *5 (W.D. La. Mar. 26, 2015), *aff'd*, 628 F. App'x 237 (5th Cir. 2015) (holding that expert testimony was required when the question before the jury was "not an assessment that a lay person can make from a mere inspection of the product itself").

Plaintiff is not a qualified expert under Federal Rule of Evidence 702 because he admits that he "do[esn]'t know anything about this medical stuff" and that "[t]his is beyond [his] knowledge."[21] *See* Fed. R. Evid. 702 (stating that expert witnesses must be qualified by "knowledge, skill, experience, training, or education" and must have "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue"). To the extent that plaintiff intends to relay the statements that his treating physicians made to him based on their expertise, this approach also fails. Even if this testimony fell within a hearsay exception, it would not be admissible because plaintiff has not presented evidence qualifying his treating physicians as experts on the issues

---

[21] *Id.* at 55.

in this case. Plaintiff's deadline to disclose expert witnesses has passed, and plaintiff has failed to timely make any disclosures. In addition, there is no evidence that his treating physicians have specialized knowledge of defendant's products. As already explained, Dr. Deaver, one of plaintiff's treating physicians, noted in plaintiff's medical records that "as a family medicine physician" he was "not qualified . . . to speculate on why the screw may have broken."[22] Even absent these obstacles, the Court cannot conclude that the opinions, as plaintiff relays them, are based on sufficient facts or data, that they are the product of reliable principles or methods, or that the witnesses have reliably applied the principles and methods to the facts of this case. Fed. R. Evid. 702. Plaintiff's recounting of his physician's statements therefore cannot be used to meet the requirement that he present expert testimony to prove his claims.

For these reasons, plaintiff's evidence fails to create a disputed issue of material fact. Plaintiff has not made a sufficient showing on any of his claims under the LPLA.

---

[22] Ex. F at 116.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED. Plaintiff's claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this __5th__ day of August, 2019.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE